May it please the Court, Alan Gura for the appellants, and I would respectfully reserve five minutes of time for rebuttal. Just watch the clock count so long as it counts down. Your Honors, I think the best evidence of what the Supreme Court held in Heller is what the Supreme Court said about Heller in the subsequent case of McDonald v. City of Chicago. McDonald opens up with the following statement, In Heller we held that the Second Amendment protects the right to keep and bear arms for the purpose of self-defense, and we struck down a District of Columbia law that banned the possession of handguns in the home. A very clear syntax there that provides that there was a holding about self-defense and then an application to allow the forbade self-defense inside the home. There was no argument made in Heller, there was no challenge in Heller to any Washington, D.C. ordinance that applied outside the home. And in fact, if we read the Heller opinion, we see language that tells us that the right is most acute in the home. McDonald told us that the right was secured most notably for self-defense in the home. But that is not the core of the right. The language about the core right of the Second Amendment in Heller states that the Second Amendment, the core right there is the right of self-defense. The Hearth and Home language appears five pages later. Self-defense, whatever else we can say about it, is obviously a right that is exercised very frequently outside the home. In many of the cases that Heller cited, many of the treatises that Heller cited, many of the 18th century and early 19th century constitutional bearing arms provisions, which Heller cited, all discussed and referenced the exercise of self-defense outside the home. So I don't think that there's any limitations certainly in Heller to inside the home, but rather the scope of the right and its historical discussion and all the sources that Heller cited for its holding suggest very strongly that the right is one that can be exercised beyond the home. Now, in this case, we have a challenge both to the statute on its face and also an as-applied challenge to Sheriff Criotto's policy. It is not necessary for the court to reach our challenge to the statute if the court first takes up the as-applied challenge and finds that Sheriff Criotto's policy is deficient. So how does your case – you brought your lawsuit as a 1983 lawsuit, correct? Correct. All right. So how would you say your facts are different than the facts in the prior case, in Peruta? My understanding – the Peruta counsel are the ultimate authorities as to what they have alleged. My understanding of it is that they are only challenging the policy that San Diego enacted. We are challenging both the policy that Sheriff Criotto enacted, just as we had challenged previously the Sacramento policy. We were able to settle that part out, and that's why Sacramento isn't here. But also we are challenging beyond the application, beyond Sheriff Criotto's policy, we're also challenging the State's grant of discretion to the sheriff to create this policy. An interesting feature of the California law, which is different than the Maryland law that was struck down in Woollard and the New York law that we've lost so far in Kachalski, is that in those cases the licensing officials were state officials represented by the attorney generals of those states. In Maryland, it's a superintendent of state police. In Kachalski, in Westchester County, it was state court judges. Here, however – But does this state need to be a party to your action? No, it does not. The state does not need to be a party, and frankly, we've done what we needed to do to put them on notice. There's nothing else we need to do. And I've done some research on Section 2403 we can discuss, but there have been cases where even very belated notice on the eve of argument by one of the parties has been held to be sufficient notice to the executive. There was a case in the Seventh Circuit on that, Tanya K. v. Board of Education. That's at 847 F. 2nd, 1243, and there are others. So there's no need for a remand. And if the state doesn't want to get involved, they've had a pattern of not wanting to be involved in these cases, I suppose we should respect that. Certainly, I don't think that opposing counsel forfeited any arguments, abandoned any claims, or didn't do anything other than a superb job in winning the case at the district court. So I don't think the state was prejudiced by it. So in your case, it was summary judgment. That's correct. And the district court granted the defendant's motion and denied the plaintiff's motion, and you concluded that the scope of the Second Amendment was limited to the right to keep a loaded firearm in the home for self-defense, and that Yolo County's licensing scheme survived rational basis? That's the way we read it. We had a decision that stated that the Second Amendment is ambiguous and subject to change over time. I think that was not a fair reading of Heller or McDonald. The court basically took the statement by Yolo County that carrying arms is dangerous and said, well, this is a public policy choice that we're not going to question. And it's important to look at Sheriff Prieto's specific policy, because I think this is the core of our case. On page 21 of the volume 2 of the excerpts of record, we have the following statement. Examples of invalid reasons to request a permit include self-protection and protection of family, without credible threats of violence. Now, interestingly, what does satisfy Sheriff Prieto's policy is if a business owner claims that he's carrying large amounts of cash. So, for example, somebody who's never been the victim of a crime and has no threats is simply transporting cash or jewelry, has more of a right to permit to have a handgun than a normal person who's afraid of armed robbery or rape or any other kind of violent crime for which the Second Amendment provides access to the means of self-defense. And so doctrinally, the way that we would look at this, and there are different options, as we argue in our brief, the first thing we can do, as Mr. Clement also suggested in his case, is simply to say that the policy categorically violates the Second Amendment, because whatever else the Second Amendment does, it secures an interest in self-defense. Here, Sheriff Prieto says self-defense is not a valid basis to obtain the permit, and that could be the end of the policy. Beyond that, the next doctrine that we would offer as being the appropriate way for the Court to examine the case would be under the doctrine of prior restraint. And here I think it should be noted, this is the most deferential, the most minimalistic, the least intrusive way that the Court can address the issue. Rather than get into the legislature's head, rather than balance Sheriff Prieto's views of public safety against the interests people have in a constitutional right, all the Court really needs to say is that there's a right at stake. You can go ahead and experiment with regulation however you see fit. And when you make specific, objectively defined regulations, perhaps there will be a lawsuit. Perhaps we'll adjudicate those under some means and scrutiny. But at the outset, the regulations have to be objectively defined so that people know what they're applying for. And so the courts, if they want to review the regulations, have some way of weighing these interests. Here we have a policy that specifically references, in writing, Sheriff Prieto's feelings. Now, under our Constitution, individuals cannot be forced to satisfy the Sheriff's feelings about their good cause or their moral character to exercise any other right. We wouldn't think of doing this for the right to have an abortion, to speak, to access counsel, or to refuse a search warrant, right? I mean, the Sheriff may have feelings about those things. Well, the policy itself is unfettered. I mean, the policy is pretty specific. The fact is that the policy that Sheriff Prieto announces does reserve the following discretion. He says that he is able to reserve and impose any and all reasonable restrictions and conditions that he has deemed warranted, that he maintains that the issuance, amendment, or evocation remains exclusively within the discretion of the Sheriff, and that renewals can occur, quote, if the Sheriff or his designee feels there is sufficient reason to renew the license. That is very broad discretion. And when we look at the cases that this Court has announced, as well as the cases that the Supreme Court has announced under the prior restraint theory, feelings, total discretion, sufficient reason, good cause, these are classic indicia of unbridled discretion. And so it would be enough, and it would be the most minimal, least intrusive, most respectful approach for a Federal court to take, to simply say, regulate, come back to us with a specific regulation that imposes some limits on your discretion, and then we can have a discussion. Now, beyond that, are you asking for a remand in this case, then, with respect to that view? No. No. No, Your Honor. The Court has everything before it. I mean, yes, but you are, really. I mean, you are saying come back to something more specific, and then we can analyze the Second Amendment. What I mean is, is that the Sheriff can issue, first of all, if you are going to simply take up our as-applied challenge, you can simply strike, say the Sheriff's policy violates the Second Amendment because it has absolutely no limits on his discretion. It's an arbitrary policy. And so we prevail. And if the Sheriff wants to rewrite a policy, then he can write a new policy. And then if there are problems with it, there may or may not be litigation. The Sheriff is acting in a sort of legislative capacity in that sense. There's no need for the district court to do anything else because the facts and law are before the court. If we were to go down the road of substantial burden and means and scrutiny, here I think it's important to note the Kacholsky opinion, which is not an opinion that we're very fond of, obviously, and we will be asking the Supreme Court to take a look at it. There is one thing about it, though, which is Kacholsky found that New York's law placed a substantial burden on the right to bear arms. The Second Circuit adopted the substantial burden case earlier this summer in a case called U.S. v. DiCastro, and they took the approach that was somewhat similar to what this Court had once done in Nordyke, which is to say if a burden is trivial or insubstantial, then we don't need to go to heightened scrutiny, but if a burden is substantial, then we go to some level of heightened scrutiny and we'll tell you what it is when we get there. And Kacholsky says, well, first of all, it assumes that there is a right outside the home, and then says in the event that there is such a right outside the home, let's see if this is constitutional. Yes, it's a substantial burden, and then it purports to apply intermediate scrutiny, and we contend that the Court did not actually do that. But all the same, it's difficult to say that Sheriff Prieto's policy, and if we get there, the State law, don't impose a substantial burden on the ability to carry guns, because here we have people who, without any sort of special proof, lose the right entirely, all places, at all times, in all manners, any way, shape, or form. That's a substantial burden. So we would get to the selection of a standard of review. And here, we also, as the appellants in the other case, prefer strict scrutiny. However, we don't contend that it actually matters what the standard of review would be. Let's look at it under intermediate scrutiny. Let's suppose that the Court says, we're not going to do a categorical test, we're not going to do prior strain, we'll go to strict, we'll go to intermediate scrutiny. Okay. Intermediate scrutiny requires the government to carry the burden of proof that there's a reasonable fit between the regulation and the interest at stake that doesn't, that doesn't trench upon the constitutional right. Well, the first step in intermediate scrutiny is to identify the right at issue. Only once we know what the right is can we weigh that right against the regulation that's being offered. Intermediate scrutiny is not an invitation to violate Heller and balance out the content of the right itself. The right exists wherever it holds, whether it goes outside the home or it doesn't. That's a question of text. It's a question of history. It's a question of our tradition. It's an analysis into all the things that the kinds of sources that Heller and McDonnell looked at. If there is a right to carry guns, just like we have rights to do other things, then the very idea that you have a right to do something means that you don't have to prove you have a good enough reason or you have a sufficiently good moral character to exercise what is your right. And so in the Woollard case, which struck down Maryland's good and substantial reason law under intermediate scrutiny, Judge Legge in the District of Maryland said, look, once you have a right to do something, you don't need to prove your good and substantial reason to do it. And that was an intermediate scrutiny decision. Here we would say the same rationale would apply, even under intermediate scrutiny. And, in fact, there is no valid State interest at stake, because while we can see  And the only reason you've lost here is the Court said you had no right outside the home, right? That's right. And we submit that that's erroneous. But we submit also there's no valid State interest here under intermediate scrutiny. There is absolutely a valid State interest in avoiding violence, reducing crime. And, yes, that interest does justify all sorts of regulations about the carrying of handguns. So we don't have a problem with time, place, and manner restrictions if they would pass, again, a form actually of intermediate scrutiny, things like background checks. States have many different approaches to licensing handguns, and those are not all implicated here. But the interest that the State has in reducing violence and avoiding accidents is very different than an interest in abolishing or restricting the exercise of a constitutional right. The argument on the other side is that the right is per se too dangerous to allow. That is a legislative judgment that questions the wisdom of what the Constitution has ratified. And intermediate scrutiny cannot be sort of a quasi-constitutional convention where the Court says, well, we're going to reexamine the policy choices that are reflected in the constitutional text because the State believes that they're too dangerous and we just can't let people do this. With that, Your Honors, respectively, if there are questions I'd like to ask. Kagan. Well, I have a question. The case that's going to be argued next week, if that were to have priority, is if that court were to say that the right, that Heller only allows a right to keep a loaded firearm in the home for self-defense, does that doom you here in terms of what the precedent that we would have to follow? Under circuit rules, if there's a prior panel that says there is no right outside the home, then I suppose that we probably would lose here. And we would take that up, but we would be as far as the circuit rules go, I'm not sure that there would be a way around that. I would, however, suggest. Well, one of the issues that we'll probably have to resolve is whether that other case, which perhaps has asserted priority, in fact, does have priority, in light of the fact that Sacramento has changed its policy and no longer has the restrictive policy. They've now added the words, self-defense, which resolves the issue, which may even moot the case. I have no idea, but. It does, Your Honor. We suggested in our opening brief that those two, we pointed out those two cases and we suggested they are, in fact, moot. Right. But we won't know until we, until they hear argument next Monday.  But our position is those cases were, in fact, mooted. If Sacramento had maintained this type of policy, they'd be arguing next. But they got to go home because they were able to settle it with us. And Sheriff Pieto, unfortunately, has not. One last question. You mentioned policy and statute that you're challenging. Do we have to, are you asking us to hold that the California statute is unconstitutional? That is one of the claims in our case, Your Honor.  What are you asking us for? I am asking the Court, in the first instance, to strike down Sheriff Pieto's policy. That may be enough if the Court finds that the ---- We wouldn't have to reach the California statute. That's correct, Your Honor. But in terms of pleading as a plaintiff's counsel, I felt that I had to also, when I saw words like moral character and good cause in the State statute that gives discretion to the Sheriff, that it may be the source of the problem. But, yes, our complaint does include an as-applied challenge as well. And we argue extensively about what, how that's been implemented. Thank you, Your Honor. Very well. You have some reserved time, counsel. Thank you. We'll hear from Mr. Whitesides. Thank you, Your Honor. I'd like to address something that Judge Callahan ---- Counsel, would you mind introducing yourself? Oh, I'm sorry. I'm John Whitesides for Sheriff Ed Prieto in the County of Yolo. Very well. Your mention of my name sort of led me into a false sense of familiarity. Judge Callahan asked a couple of times about Section 12031 and about the district court's alternate holding here that there was a means to fulfill any second amendment right to publicly carry a weapon. And that's what I would like to explore with you because it is untrue that there is a total ban in California under that section or under its soon-to-be succeeding  The issue is, as has been pretty much agreed on by the parties, not so much the constitutional right to carry a concealed weapon. Plaintiffs agree that per se there is no such right. Instead, they argue that that right is created indirectly by the unavailability of an alternative means of expressing their second amendment right. The alternative means being the open carrying of the weapon. Now, where in California can you openly carry a sidearm? If you're in those counties with a population of less than 200,000, you can get a permit from the sheriff to do so in an open and loaded fashion, including in the city limits. Is assertion of self-defense a sufficient interest in those counties? Is that typical, is what you're telling us? There's been no claim by the plaintiffs that the policies in those counties is overly restrictive. Since YOLO is not one of them, I cannot tell you that for any particular county with a population of less than 200,000 what that particular sheriff does or doesn't do. YOLO is above 200,000. So for these plaintiffs, that is not a solution. Okay, so what's the California scheme when you're in a population above 200,000 for the county? Well, the statutes only apply, only ban the open carrying of weapons in public places within city limits, the incorporated areas. Or if you're outside of city limits, then you're banned from carrying if it's a place where it would be within 150 feet of a private residence without permission of the property owner, et cetera. Plaintiffs have said in their brief that they're not terribly concerned about what goes on outside of city limits, where generally you do have a right to carry and there's just a few carved out exceptions. Okay, so what's the situation inside city limits? Well, your home, your property that you own or lease is exempt. The statutes don't purport to regulate that, so we don't have a Heller issue, we don't have a McDonald issue. Going to the target range or the gun shop is exempt, so we don't have the Azzell issue that the Seventh  We don't have the gun shops, we don't have the fireworks, we don't have that. Where would the Second Amendment next go? Well, the thought would be it would go to your business property, where you work, your shop, if you're a sole proprietor or your law office, if you're an attorney, or where you're employed, if it's a welding shop. Doesn't apply to that. Statutes don't prescribe open carrying in those places. If it's your shop or you're an employee, it's okay. Well, where else could it be? Driving your car. Driving a car is more complicated, Your Honor, because it depends on where you're going and for what purpose. To and from the gun shop, okay. To and from place of employment, okay. So if basically, and I'm generalizing, if your starting point and your destination are both places where it's legal to carry, then you're okay in the car, too. The basic car rule, the default rule is if it's locked in the trunk or in the passenger compartment in a locked container other than the glove compartment, it's okay. But you can't have it out sitting there on the seat next to you. But if the core right is your right to self-defense, you know, when you're out in your car, that's a really good, you know, you've heard of carjacking or your car breaks down or any number of things along those lines. I mean, your right to self-defense could come into play. Certainly. Your right to self-defense could come into play anywhere. There's many courthouses where the right to self-defense could come into play.  I don't have a problem with the notion that the Second Amendment extends to private property other than one's home. So, for example, does it extend to your place of employment? That's a good question. The sheriff does not oppose the notion that if I'm in my jewelry store, I have a Second Amendment right to have a firearm in my jewelry store. I think the key issue in this case is what happens when we get past all the places that the statutes don't apply to, private property that's either yours or where you have the permission to be. You go to your neighbors. You go to your relatives. Any private property where you have permission to have the gun, the statutes don't apply to. So what we're left with is public property, schools, government buildings, et cetera, which the Supreme Court's already strongly indicated the Second Amendment does not allow you to go on to armed, and private property that's open to the public, restaurants, bars, grocery store, the shopping mall. And I would submit that's what this case is all about. Because what California does there is say you can do it if you have permission of the property owner. Now, that, I think, is very important because the plaintiffs don't contend that the Second Amendment gives them a constitutional right to trespass. And the Eleventh Circuit has recently affirmed a Georgia district court decision that says the Second Amendment doesn't allow you to take your gun into church over the church's objection. You have no Second Amendment right to be on private property without the consent of the property owner. Well, counsel, with all due respect, we're really getting way outside the issue here. Specifically, the policy of Yolo County is that self-protection and protection of family without credible threats of violence is an invalid reason for the grant of a permit. For concealed, Your Honor. All right. But there's no constitutional right to concealed per se. The plaintiff's argument, and the reason I'm not going afield, is that we have to have a way to carry, and California won't allow us to openly carry. Therefore, you have to give us these concealed permits. My point, Your Honor, is that that premise is untrue. California does allow, in a very meaningful way, them to carry openly firearms in the vast majority of places. The only issue is that they have to have the permission of the property owner and, when it's not their property, and here's where the new law kicks in. What the new law says is if it's a restaurant, a bar, if it's private property that's a public place, the gun has to be unloaded. You cannot have a loaded gun in the bar, in the restaurant, in the grocery store. So, A, it has to be unloaded. B, you have to have permission of the owner or tenant, as the case may be. So this is so important, Your Honor, because ‑‑ So how is the new law really different than the old law? The old law, you couldn't have a loaded gun in a lot of these places, right? The old law generally allowed you to go anywhere, again, other than schools, government buildings, et cetera, as long as the gun was unloaded. Now ‑‑ But 12031 was a loaded gun. Correct. Yes. There wasn't a statute on unloading. I guess it started going back to old school when I was a prosecutor, so I'm a little out of date here. Now, for example, the car, you can't just have it in the car unloaded. It has to be in a locked container or in the trunk. So there are some new restrictions that the new law brings in. And our position would be that to the extent that the Second Amendment goes outside the home, outside homes is the wrong word, outside one's own property. I mean, I could own ten acres and be wandering around carrying, and I'd be outside my home but still on my property. And I think we'd all agree the Second Amendment would still protect my right to carry. So I think the issue is once you're outside of your own property, where, if anywhere, does the Second Amendment give you this right to carry? And we could get into interesting issues like my place of work or hunting in areas where it's legal to hunt. But in this case, we don't need to resolve where that boundary should be between where Heller says the Second Amendment doesn't go and where Heller says it does. Because wherever you draw that boundary, California does provide a meaningful outlet for carrying. The only issue, the only real point of dispute in this case, even though it's not openly acknowledged, is I want to be able to go into the bar or the restaurant with the gun loaded. And the position of the sheriff and of the county and of the State of California in these statutes is, no, the gun must be unloaded if you're in a public place like a bar or restaurant. Unless you have a concealed weapon permit. Right. So the reason why I don't think this case is about the sheriff's policy is because, A, the State grants the sheriff this broad discretion, no question about it. The sheriff has articulated how he will exercise it. It's not vague. It's not arbitrary. The plaintiffs just don't like it. The plaintiffs say it's too narrow. The sheriff should be giving more credence to the basic self-defense desire and not requiring a showing of special need. So there's nothing vague about the policy. If self-defense is more than a desire and is, in fact, part of the core fundamental right, then what? Then you have to determine how far beyond one's own private property that right goes. Does it go to this courthouse? Does it go to schools? Does it go to restaurants, to bars? And the Supreme Court, again, has said it definitely includes one's own property, and it doesn't include, quote, sensitive places, unquote. So you have to decide whether or not a restaurant or a grocery store is a sensitive place. Why do we have to decide that at all in the sense of analyzing Second Amendment issues? We aren't drawing bright lines. The legislature may or may not weaken determinant. We have to decide how to analyze it. So moving beyond, I mean, do you think that we ought to use substantial burden? Do you think we need to use intermediate scrutiny? I mean, the means of analysis may be more important in some respects than the actual outcome. I would propose, Your Honor, that if the right is infringed on only in the sense of being more difficult to exercise, but that there is no substantial burden, then there should be no heightened scrutiny. It should be a rational basis review if there is no substantial burden on the right. So, I mean, clearly here, if their right goes everywhere, if it goes to every public place, then there's no question that these laws restrict it. But do they substantially burden it by forcing them to have the gun be unloaded inside the restaurant or bar, subject, again, to all the exceptions for self-defense, et cetera, that the statute has? Is that a substantial burden on the Second Amendment right, to have to load the gun? We would say no. The odd thing about the posture of this case and the other one, in a sense, is because California law has been moving, the district courts really haven't had a chance to analyze this in detail. In other words, when I say this, I'm talking about the interplay of the new statute and the constitutional arguments raised in this one. Now, ordinarily, we would have the district court do that, and I realize no one wants us, apparently, to send it back. What's your position? You have in the record the plaintiffs attached all the new statutes to the reply brief, which, obviously, you could look up anyway. But you know what parts of the old statute the district court found relevant and instructive to its decision, including the self-defense exception. Certainly, you can check the new statute and say, that same exception is still there, therefore, the district court's analysis would not be changed in any meaningful way. So, yes, I think you can affirm without sending it back first, because the new law does not alter in any way what the district court's analysis was based on. Now, if it changed in a way that the district court had focused on, then I would say, yes, that's different. Anything further, counsel? Not that I can think of, no. We would agree that the State's not an indispensable party, just on the procedural question. And I don't want to complicate this more, but I should point out that under California law, in a 1983 case, the sheriff is a State actor and acts for the State, not the county. This Court has not revisited that issue since the California Supreme Court's decision in Venegas v. County of Los Angeles. So ---- Is this for 1983 purposes? Correct. Right. Which is what this case is, the 1983 case. So another way that ---- Well, evidently, we have the State in this case. Correct. Under the California Supreme Court's view, the State is already here by virtue of Mr. Prieto. Very well. No further questions. Thank you, counsel. Thank you, Your Honor. Mr. Gura, you reserve some time. Yes. Very briefly, Your Honor. Judge Thomas, you are correct. We don't need to resolve all possible cases. This is an extremely narrow case. We don't have a rule that forbids guns in the produce aisle or in somebody's  I suppose if Sheriff Prieto or the State were to enact such rules, then perhaps they might be litigated in the future. Does the amended statute strengthen or weaken your argument? Actually, we believe that the argument was plenty strong before the amendment. I would say that on balance it strengthens the argument because it ---- Why? Because it dispenses with the notion that the district court adopted in at least the Peruta case, which held that it's good enough under the Second Amendment to carry an unloaded handgun, and then if you're attacked, you can go ahead and load it. That option is now off the table. And we would ---- we submitted originally, of course, that that was not ---- that is not what Heller had in mind when Heller held that you have the right to be armed and ready in case of a confrontation with another person, just like having a locked, unloaded gun in the trunk of your car is not something that is being armed and ready. It's not something that's useful for the purpose of self-defense. And we've had many old cases, and some of them Heller discussed. I think the Reed case in particular from the high court in Alabama that held that making the right meaningless by preventing it from being practical, the exact language is in the brief, is not going to fly under the right to bear arms. But all the same, we heard from counsel that there are all kinds of places, not at issue in the case where you can carry a gun, but the issue here is not what you do in a bar or a supermarket. The issue is what you can do on the sidewalk or on the road in front of those establishments. And here, of course, there is no solution. There is absolutely no way to carry a gun for self-defense if you're a normal person in California, unless you have one of these permits. The state has the complete authority, if they want, to make this an open carry state, to make it a concealed carry state, to license one or the other or both, to impose time, place, and manner restrictions. There's a lot of things that the state can do that we cannot complain about. But so long as there is a right, there has to be the ability of a person to exercise that right in some way, shape, or form in places that are not sensitive, at least. Again, this isn't a sensitive places case. We might have one of those in the future. This isn't it. And as counsel admitted, and I think this is a very significant concession, the right to self-defense indeed can occur anywhere and can occur in places like the city of Davis, like Yolo County, and it's a right that our clients should be able to subject, of course, to appropriate regulations. The regulations here are not appropriate. Thank you, Your Honors. Roberts. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Thomas, Callahan